# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 06-6001NE

_____

| | |
|---|---|
| In re: | * |
| | * |
| M&S Grading, Inc., | * |
| | * |
| Debtor. | * |
| | * |
| The CIT Group / Equipment | * |
| Financing, Inc., | * |
| | *   Appeal from the United States |
| Plaintiff - Appellee, | *   Bankruptcy Court for the District |
| | *   of Nebraska |
| v. | * |
| | * |
| M&S Grading, Inc., | * |
| | * |
| Debtor - Appellant. | * |

_____

Submitted: July 6, 2006
Filed: July 27, 2006

_____

Before SCHERMER, FEDERMAN and VENTERS, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

This is an appeal of the bankruptcy court's determination that the Plaintiff's interest in certain personal property in the Debtor's possession is superior to the Debtor's interest in that property and that the Debtor must relinquish possession to the

Plaintiff.  We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b).  For the reasons set forth below, we affirm the decision of the bankruptcy court.[1]

## I.  STANDARD OF REVIEW

We review findings of fact for clear error and conclusions of law *de novo*.[2]  The sole issue on appeal is whether the court properly interpreted Nebraska UCC § 2A-305.  Matters of statutory interpretation are reviewed *de novo*.[3]

## II.  BACKGROUND

The issue on appeal is purely legal; the facts are straightforward and undisputed.  In March 1999 the Plaintiff, The CIT Group / Equipment Financing, Inc. ("CIT"), leased two pieces of equipment ("Equipment") to Fehrs Nebraska Tractor & Equipment Co. ("Fehrs").[4]  The parties agree that the Equipment is subject to the Nebraska Certificate of Title Act.[5]  In September 2000, Fehrs sold the Equipment to the Debtor.  Fehrs executed a bill of sale, and the Debtor executed a promissory note promising to pay Fehrs the full amount of the sales price on an installment basis.  Fehrs did not, however, deliver the certificate of title for the Equipment to the Debtor because Fehrs did not have it, nor did Fehrs have a right under Fehrs's lease agreement with CIT to request it.  At the time of the transfer, Fehrs had not made all of the payments under the lease and the lease term had not expired.  Shortly after the

---

[1] The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

[2] *Kelly v. Jeter* (*In re Jeter*), 257 B.R. 907, 909 (B.A.P. 8th Cir. 2001).

[3] *Johnson v. Methorst,* 110 F.3d 1313, 1315 (8th Cir. 1997) (*de novo* review of federal court's interpretation of state statute).

[4] The Equipment consists of an Etnyre Model PRTN50TD3-T1 Lowboy Trailer and an Etnyre Flip Axle.

[5] Neb. Rev. Stat. §§ 60-101 to 60-197.

sale, Fehrs went out of business, and CIT received no further payments under the lease.

Almost two years later, in May 2002, the Debtor filed a chapter 11 bankruptcy and listed the Equipment as property of the bankruptcy estate. Sometime in late 2003, CIT became aware of the Debtor's claim of ownership in the Equipment. When the Debtor refused to relinquish possession of the Equipment, CIT initiated this adversary proceeding to obtain an order requiring the Debtor to turn over the Equipment.

The adversary proceeding was tried on October 3, 2005, and on December 21, 2005, the court issued a memorandum opinion in which it held that, under Nebraska UCC § 2A-305, CIT held a superior interest in the Equipment because the Debtor did not obtain a certificate of title to the Equipment when it purchased the Equipment from Fehrs. Rather, CIT still held the title to the Equipment.

## III. DISCUSSION

The sole issue on appeal is whether the bankruptcy court properly interpreted and applied Nebraska UCC § 2A-305. Section 2A-305, entitled "Sale or sublease of goods by lessee," provides in pertinent part:

> (1) Subject to the provisions of section 2A-303, a buyer or sublessee from the lessee of goods under an existing lease contract obtains, to the extent of the interest transferred, the leasehold interest in the goods that the lessee had or had power to transfer, and except as provided in subsection (2) and section 2A-511(4), takes subject to the existing lease contract. . . .
>
> (2) A buyer in the ordinary course of business or a sublessee in the ordinary course of business from a lessee who is a merchant dealing in goods of that kind to whom the goods were entrusted by the lessor

3

obtains, to the extent of the interest transferred, all of the lessor's and lessee's rights to the goods, and takes free of the existing lease contract.

(3) A buyer or sublessee from the lessee of goods that are subject to an existing lease contract and are covered by a certificate of title issued under a statute of this state or of another jurisdiction takes no greater rights than those provided both by this section and by the certificate of title statute.

The bankruptcy court carefully analyzed each provision of this statute. It explained that section (1) states the general rule that a buyer receives only the interest that the lessee had and takes subject to the existing lease contract; section (2) provides an exception to that general rule, permitting a lessee who also happens to be a merchant dealing in the goods leased to transfer both the lessee's and the lessor's rights in the goods to a buyer in the ordinary course of business; and section (3) provides an exception to the exception whereby the interest transferred to the buyer is limited by the certificate of title statute, even if the lessee is a merchant dealing in the goods and the buyer is a buyer in the ordinary course of business.

Applying the statute to the Debtor's purchase of the Equipment from Fehrs, the bankruptcy court found that the Debtor was a buyer in the ordinary course of business and that Fehrs was a merchant dealing in goods of the same kind as the Equipment, but that the Debtor did not obtain title to the Equipment because the Debtor did not receive the certificate of title from Fehrs, and under the certificate of title statute, Neb.

4

Rev. Stat. § 60-105,[6] the holder of the certificate of title, CIT, holds a superior interest in the Equipment.

The Debtor contends that the court misinterpreted § 2A-305, arguing that § 2A-305 is analogous to Nebraska UCC § 2-403, which the Nebraska Supreme Court held in *Dugdale of Nebraska, Inc., v. First State Bank,*[7] does not require a buyer in the ordinary course to obtain a certificate of title in order to obtain title to certificated goods. In further support of this argument, the Debtor cites the official comment to § 2A-305,[8] which in turn references the comment to a neighboring code section, § 2A-304. The comment to § 2A-304 states that § 2A-304 should be interpreted consistently with the Nebraska Supreme Court's construal of the relationship between

_____

[6] Section 60-105, the provision of the Nebraska Certificate of Title Act in effect at the time of M&S's purchase of the Equipment, provides in pertinent part:

> (1) No person....acquiring a motor vehicle. . . shall acquire any right, title, claim, or interest in or to such motor vehicle. . . until he shall have had delivered to him physical possession of such motor vehicle. . . *and a certificate of title.* . . . No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle...sold or disposed of. . . unless there is compliance with this section. (emphasis supplied)

The Certificate of Title Act was amended in 2005, but the substance of § 60-105 remained unchanged; it is now found at § 60-164.

[7] 420 N.W.2d 273 (Neb. 1988).

[8] The official comment to § 2A-305 states that "while section 2-403 was used as a model for this section, the provisions of section 2-403 were significantly revised to reflect leasing practice and to integrate this article with certificate of title statutes." With specific regard to subsection (3), the comment notes, "Subsection (3) states a rule of construction with respect to a transfer of goods from a lessee to a buyer or sublessee, where the goods are subject to an existing lease and covered by a certificate of title."

the certificate of title statute and Nebraska UCC § 2-403.[9] The Debtor maintains that this is a reference to *Dugdale* and that it applies equally to § 2A-305.

We find no error in the court's interpretation or application of § 2A-305. Whether interpreting federal or state law, a federal court's analysis of a statute must begin with the plain language. "[A] court's primary objective is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary and commonly understood meaning."[10] Subsection (3) of § 2A-305 specifically states that "a buyer or sublessee from the lessee of goods that are subject to an existing lease contract and are covered by a certificate of title issued under a statute of this state or of another jurisdiction *takes no greater rights than those provided both by this section and by the certificate of title statute.*"[11] (emphasis added) The certificate of title statute, § 60-105, states that a buyer of a vehicle covered by the statute cannot obtain title to the vehicle until the buyer has physical possession *and a certificate of title*. Thus, the plain language of these statutes unambiguously supports the bankruptcy court's conclusion that a buyer of certificated goods must obtain the certificate of title to claim title to those goods, notwithstanding the buyer's status as a buyer in the ordinary course.

Neither *Dugdale* nor the comments to §§ 2A-304 and 2A-305 warrant a deviation from the plain language of the statute. The bankruptcy court declined to

---

[9] *"Where the relationship between the certificate of title statute and section 2-403, the statutory analogue to this section, has been construed by a court, that construction is incorporated here.* Sections 1-102(1) and (2) and 2A-103(4). The better rule is that the certificate of title statutes are in harmony with section 2-403 and thus would be in harmony with this section. Where the certificate of title statute is silent on this issue of transfer, this section will control." Neb. Rev. Stat. UCC § 2A-304, cmt. 7 (2005).

[10] *Johnson*, 110 F.3d at 1315.

[11] Neb. Rev. Stat. UCC § 2A-305(3) (emphasis added).

6

apply *Dugdale*'s interpretation of § 2-403 to § 2A-305 on several grounds, the most salient being that § 2A-305(3) specifically incorporates the Nebraska certificate of title statute, whereas § 2-403 is silent on the relationship between the two. The bankruptcy court explained: "To assume that *Dugdale*, which was not a lease case and which was not decided under a statutory provision that specifically makes the certificate of title act applicable to lease cases, is binding precedent would require the court to ignore a specific provision of the statute." The bankruptcy court's reasoning here is sound and will be affirmed.

The Debtor's suggestion that the comments to §§ 2A-304 and 2A-305 support interpreting those provisions in accordance with *Dugdale* is not wholly without merit, but courts are bound by statutes, not statutory commentary,[12] and, as noted above, the plain language of § 2A-305 compels the result reached by the bankruptcy court. Moreover, § 2A-305 was enacted after the Nebraska Supreme Court ruled *Dugdale* (a fact the bankruptcy court also observed), and a legislature is presumed to have knowledge of judicial precedent relating to the subject matter under inquiry,[13] so § 2A-305's specific incorporation of the certificate of title act cannot be disregarded, even if the comments to the statute suggest a contrary interpretation. The Nebraska legislature might have intended to draft § 2A-305 to incorporate the holding in *Dugdale*, but the statutory language does not reflect that intent. If anything, the specific incorporation of the certificate of title act into § 2A-305 suggests that the Nebraska legislature intended to preclude the application of *Dugdale* to § 2A-305.

---

[12] *Thompson v. U.S.*, 408 F.2d 1075, 1084 n.15 (8th Cir. 1969) ("Official Comments to the Uniform Commercial Code are not binding upon the courts but they are persuasive in matters of interpretation . . . .").

[13] 82 C.J.S. Statutes § 310 (2006).

## IV.  CONCLUSION

For the reasons stated above, we affirm the bankruptcy court's decision.

———————————————