# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: CHARLES LAIZURE;
JULIE ANN LAIZURE,
                         *Debtors,*

BUSSETO FOODS, INC.,
                         *Appellant,*

v.

CHARLES LAIZURE,
                         *Appellee.*

No. 06-16857

BAP No.
EC-06-1112-BMoS

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Brandt, Montali, and Smith, Bankruptcy Judges, Presiding

Argued and Submitted
May 16, 2008—San Francisco, California

Filed November 17, 2008

Before: Procter Hug, Jr. and N. Randy Smith, Circuit Judges,
and Richard Mills,* District Judge.

Opinion by Judge Hug

---

*The Honorable Richard Mills, United States District Judge for the
Central District of Illinois, sitting by designation.

15405

**COUNSEL**

Michael Wilhelm, McCormick, Barstow, Sheppard, Wayte & Carruth LLP, Fresno, California, for the appellant.

Kristine M. Kelly, Fresno, California, for the appellee.

## OPINION

HUG, Circuit Judge:

In this bankruptcy case, we determine whether a creditor that is required to return to the trustee a payment from the debtor made within the ninety-day preference period still maintains a claim against the debtor for a nondischargeable claim. Busseto Foods, Inc. ("Busseto") contends that the payment it was required to pay to the trustee was a repayment of funds embezzled by the debtor, Charles Laizure, and thus a nondischargeable claim. The Bankruptcy Appellate Panel ("BAP"), in affirming the bankruptcy court, held that 11 U.S.C. § 502(h) only allows Busseto to bring a claim against the bankruptcy estate and not against the debtor, Laizure.

We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1) and we reverse the decision of the BAP and remand for further proceedings.

## I.

Busseto employed Charles Laizure as its controller and chief financial officer from February 1, 1998 until August 20, 2004. After Laizure left, Busseto discovered he had embezzled a large amount of money during his employment. After admitting he took the money, Laizure agreed to repay the funds in installments. He first paid Busseto $10,000 in December 2004 and then $30,000 on February 18, 2005. On June 5, 2005, Laizure arranged a final payment of $38,833.70 to Busseto to be paid directly from escrow upon the closing of the sale of his house. Shortly thereafter escrow closed and Busseto received the final payment.

Less than ninety days after the $38,833.70 payment to Busseto, Laizure filed a Chapter 7 bankruptcy petition on August 17, 2005. After learning of Laizure's June payment to Busseto, the Chapter 7 trustee pursuant to 11 U.S.C. § 547 sent Busseto a letter demanding the return of the $38,833.70 because Laizure had made the payment during the ninety-day preference period.

Busseto and the trustee then engaged in negotiations to settle the matter. Fearing the negotiations would not resolve the issue as the nondischargeability filing deadline approached, Busseto filed the complaint at issue here on November 17, 2005 to determine the amount and dischargeability of Laizure's debt.[1] The complaint alleged that, because of Laizure's embezzlement and other conduct involved with the debt, any amount returned to the trustee pursuant to the demand should be held nondischargeable under 11 U.S.C. § 523(a)(4).

After filing the complaint, Busseto agreed with the trustee to pay the estate $34,000 to resolve the preference matter. Busseto then filed a claim against the bankruptcy estate for $34,000. During the bankruptcy proceedings, the trustee collected only a total of $34,628.83, $34,000 of which came from Busseto. After deducting compensation and expenses for the trustee in the amount of $4,253.38, the balance of $30,375.45 was used to pay Laizure's priority tax claims.

While the estate was being settled, Laizure filed a motion in bankruptcy court to strike Busseto's November 17 complaint or in the alternative, for a more definite statement. The bankruptcy court granted Laizure's motion to dismiss Busseto's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The bankruptcy court reasoned that "there was no debt on the day the bankruptcy was filed" because Busseto was fully repaid at

---

[1]The deadline for filing nondischargeability complaints was November 22, 2005.

that time. In addition, no debt existed on the date the complaint was filed because Busseto had not yet returned any money to the estate on that date. The bankruptcy court also found that § 502(h) does not "revive . . . individual liability that can be imposed . . . on the debtor." Busseto then appealed this decision to the Bankruptcy Appellate Panel.

On appeal to the BAP, Busseto argued that § 502(h) reinstated its claim against Laizure after Busseto paid the settlement of the trustee's claim. However, the BAP, in affirming the bankruptcy court, concluded that § 502(h) does not permit Busseto to "reinstate[ ] its claim against the debtor once it paid the settlement of the trustee's claim." *Busseto Foods, Inc. v. Laizure* (*In re Laizure*), 349 B.R. 604, 607 (B.A.P. 9th Cir. 2006). The BAP emphasized that it read the relevant statutes to say that, under § 502(h), Busseto could bring a claim against the *estate* but not the *debtor*. *Id.*

The BAP also briefly addressed the bankruptcy court's ruling that no debt existed on the petition date and Busseto's counter-argument that it did have a contingent claim under the Code's broad definition of "claim." *Id.* at 607-08. The BAP agreed with the bankruptcy court that no claim existed on the petition date and further stated that even if Busseto had a contingent claim on the petition date, § 727(b) would likely "eviscerate [Busseto's] position." *Id.* at 608.

## II.

We review BAP decisions *de novo* and apply the same standard that the BAP uses to review bankruptcy court decisions *Arrow Elec., Inc. v. Justus* (*In re Kaypro*), 218 F.3d 1070, 1073 (9th Cir. 2000). The BAP reviews *de novo* a bankruptcy court's dismissal of a claim pursuant to 12(b)(6), *Stoll v. Quintanar* (*In re Stoll*), 252 B.R. 492, 495 (B.A.P. 9th Cir. 2000); therefore, we apply the same standard here.

[1] Generally, § 502(h) allows claims arising from recovery of property by the trustee under § 550 the same as if the claim

had arisen before the filing date of the bankruptcy petition. *See Verco Indus. v. Spartan Plastics* (*In re Verco Indus.*), 704 F.2d 1134, 1139 (9th Cir. 1983); *see also* 4 COLLIER ON BANKRUPTCY ¶ 502.09 (15th ed. 2008). Subsection 502(h) states in whole:

> A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(h). Simply stated, if the claim meets certain requirements the claimant can bring the claim as if it had arisen before filing the petition.

**[2]** In this case, the trustee avoided Laizure's final transfer to Busseto under § 547 and recovered the $34,000 under § 550. According to the language of § 502(h), the trustee, through using this § 550 recovery ability, revived Busseto's claim to prepetition status. Consequently, Busseto has a claim against Laizure "the same as if . . . [it] had arisen before the date of the filing of the petition." 11 U.S.C. § 502(h).

The bankruptcy court dismissed Busseto's claim under Fed. R. Civ. P. 12(b)(6) because "there was no debt on the day the bankruptcy was filed" and Busseto had not yet returned any money to the estate on the date the complaint was filed. The bankruptcy court also found that § 502(h) does not "revive . . . individual liability that can be imposed . . . on the debtor." Although it admitted feeling sympathetic toward Busseto, the bankruptcy court believed it had no statutory ability to remedy the situation and dismissed Busseto's complaint.

In affirming the bankruptcy court, the BAP narrowly read § 502(h) as only allowing Busseto to pursue a claim against

the bankruptcy estate and not the debtor. *In re Laizure*, 349 B.R. at 607. This interpretation prevented Busseto from pursuing a claim against Laizure personally and effectively left Busseto unable to recoup any of the money it paid to the estate because all of the money in the estate was used to pay the trustee's fees and the priority tax claims.

The BAP's conclusion, however, conflicts with our precedent as well as the relevant statutory language. In *In re Verco* we stated:

> [T]he import of Section 502(h) is that where a claim is allowable as provided in that section, its status is as a claim in existence on the date of the filing of the petition regardless of when, after the petition, the trustee has taken the necessary action and recovered.

704 F.2d at 1139 (quoting 3 COLLIER ¶ 502.08 at 502-92 n.6). The trustee's action in the instant case clearly reinstates the claim; however, Laizure contends that the action does not reinstate the nondischargeable claim against him as the debtor.

If the debt to Busseto is dischargeable, the bankruptcy proceeding would discharge the debt. However, if the debt is nondischargeable, and there had been no preference avoidance by the trustee, the debt would have remained nondischargeable. Thus, the question we face is whether the trustee's action in requiring Busseto to pay to the bankruptcy estate the amount it received from Laizure deprived Busseto of its nondischargeable claim.

The BAP held that § 502(h) pertains only to claims against the bankruptcy estate, not to claims against the debtor. *In re Laizure*, 349 B.R. at 607. It relied on the wording of § 502(h) that a claim arising from property recovered as a preference shall be allowed or disallowed under various subsections of § 502(h). *Id.* (citing 11 U.S.C. § 502(h)). However, the lan-

guage of § 502(h) is broader than that. Again, this subsection provides that a "claim arising from the recovery of property under section . . . 550 . . . of this title shall be *determined*, and shall be allowed . . . or disallowed . . . , the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(h) (emphasis added).

**[3]** This statutory language is notable for two reasons. First, the wording of the subsection requires a § 550 claim to be "determined." There would be no reason to require a § 502(h) determination if it were subsumed by allowability, so the plain language of § 502 demonstrates that the determination is an independent inquiry. Second, the statute's use of the word "and" shows Congress' intent to reinstate both determined *and* allowed claims.

**[4]** Section 523 further explains the import of the word "determination." The phrase "determination of dischargeability" appears twice in § 523. *See* 11 U.S.C. § 523(a)(3)(B), (d). This phrase is significant because § 523 states that a "discharge under section 727 . . . of this title does not discharge an individual debtor from *any debt*." § 523(a) (emphasis added). "Any debt" is certainly broad enough to apply to personal claims, so if a claim is determined to be nondischargeable, § 523 allows that claim to be brought against the individual debtor. Thus, if a § 550 claim is determined to be nondischargeable under § 502(h), § 523 permits that reinstated claim to be brought against the debtor personally.

We have found only one case from other circuits that analyzes § 502(h) and note that it reaches a similar conclusion. The First Circuit analyzed the language of § 502(h) as it related to the secured or unsecured status of a claim. *Fleet Nat'l Bank v. Gray* (*In re Bankvest Capital Corp.*), 375 F.3d 51 (1st Cir. 2004). In reading § 502(h), the First Circuit concluded that "the natural import of [§ 502(h)'s] language— especially the words 'shall be determined, and shall be allowed . . . the same as if such claim had arisen before the

date of the filing of the petition'—is that *the 502(h) claim takes on the characteristics of the original claim*, including . . . its secured status." *Id.* at 67 (quoting 11 U.S.C. § 502(h)) (emphasis added). The First Circuit supported this conclusion by noting that § 506 used the phrase "determination" of secured status. *In re Bankvest Capital Corp.*, 375 F.3d at 67 (citing 11 U.S.C. § 506). This conclusion allowed the First Circuit to reinstate the creditor's claim to its prepetition status, just as we do here. Further, the First Circuit concluded there was "no reason, nor any indication of legislative intent in § 502(h), to strip a secured creditor of its secured claim." *In re Bankvest Capital Corp.*, 375 F.3d at 67.

**[5]** We reach essentially the same conclusion here. By avoiding Laizure's repayment to Busseto, the trustee put Busseto in a position where it was still not fully repaid the total amount of Laizure's embezzled funds. Under § 502(h), Busseto therefore returned to the same position it was in before Laizure made the final repayment. Without recourse through § 502(h), Busseto would never recoup the embezzled funds. To read § 502(h) otherwise would negate the impact and role § 502(h) plays in the overall statutory scheme. Accordingly, we hold that Busseto retains its nondischargeable claim against Laizure just as the First Circuit held that Fleet retained its status as a secured creditor.

*County of Sacramento v. Hackney* (*In re Hackney*) supports our holding. 93 B.R. 213 (Bankr. N.D. Cal. 1988). In that case, the bankruptcy court in the Northern District of California analyzed § 502(h)'s language and directly addressed these issues in a remarkably similar situation to that present here. There, the debtor was convicted of welfare fraud and ordered to pay restitution to the County of Sacramento. *Id.* at 214. Less than ninety days after making the restitution payment to the County, the debtor filed a Chapter 7 bankruptcy, and the trustee ordered the County to return the restitution payment because the payment was made during the ninety-day preference period. *Id.* The County then filed an action against the

debtor, seeking a declaration that its § 502(h) claim based on the returned restitution payment was nondischargeable. *Id*. The court granted the County's summary judgment motion, holding that "the avoidance of a transfer under the bankruptcy avoiding powers cited in 11 U.S.C. § 502(h) reinstates the transferee's nondischargeable claim against the debtor." *Id*. at 219.

**[6]** In reaching this conclusion in a carefully reasoned opinion, the court specifically addressed whether § 502(h) applied solely to claims against the estate and not the debtor. After reading the relevant statutory language and case law, including *In re Verco*, the court concluded that "the claim arising from the avoidance of a transfer under 11 U.S.C. § 502(h) is a claim against the debtor, not just a claim against the estate." *In re Hackney*, 93 B.R. at 217. Thus, *In re Hackney* bolsters our holding that § 502(h) reinstates a claim against the debtor and its nondischargeable status.

In addition to its main findings, the BAP determined that even if Busseto had a claim, § 727(b) would likely foreclose it by discharging any claim arising under § 502. *See In re Laizure*, 349 B.R. at 608. However, this statement ignores very key introductory wording in § 727(b), which excepted claims brought pursuant to § 523. *See* 11 U.S.C. § 727(b) ("Except as provided in section 523 of this title . . ."). Here, Busseto brought its claim under § 523(a)(4), which states:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4). Reading both statutes according to their clear and plain meaning, § 727 does not foreclose Busseto's argument. Instead, § 727 does not apply because it excepts claims brought under § 523, such as Busseto's claim against Laizure for embezzlement.

**[7]** Finally, this conclusion best advances the policies of our bankruptcy laws. As the Supreme Court has explained, "the Act limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) (citations and internal quotations omitted). The Court later stated that these "statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts . . . [including] liabilities for fraud." *Id.* at 287. Here, allowing Laizure to avoid repaying the funds he embezzled from Busseto would contravene Congress' intent. A contrary conclusion would only encourage debtors to pay outstanding debts that are nondischargeable and later file for bankruptcy protection, thus avoiding the nondischargeability of their debt under the veil of our bankruptcy laws.

## III.

**[8]** For the reasons stated, the BAP erred in affirming the bankruptcy court's dismissal of Busseto's complaint. Because of the dismissal under 12(b)(6), the bankruptcy court did not reach the factual issue of whether Laizure's debt is nondischargeable. We REVERSE the decision of the BAP, and we REMAND for further proceedings.