31 F.3d 620
 31 Collier Bankr.Cas.2d 1110, 25 Bankr.Ct.Dec. 1485,
Bankr. L. Rep. P 76,016
 UNITED STATES of America, on behalf of the UNITED STATES
POSTAL SERVICE, Plaintiff-Appellant,
v.
DEWEY FREIGHT SYSTEM, INC., Debtor-Appellee,
Boatmen's First National Bank of Kansas City, as successor
in interest to The Merchants Bank, Intervenor-Appellee.
 No. 93-2767.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 12, 1994.
Decided July 25, 1994.
Rehearing Denied Nov. 2, 1994.
 
 Samuel R. Maizel, Washington, DC, argued (J. Christopher Kohn, Tracy J. Whitaker, Judith M. Strong, Frank W. Hunger and Julie Holvik, on the brief), for appellant.
 Steven M. Leigh, Kansas City, MO, argued (Richard L. Martin and Kristen B.P. Clark, on the brief), for appellee.
 Before LOKEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and KYLE,* District Judge.
 LOKEN, Circuit Judge.
 
 
 1
 In this bankruptcy case, the United States Postal Service (USPS) seeks to recoup, or offset, damages incurred when Chapter 11 debtor Dewey Freight System, Inc. ("Debtor" or "Dewey"), refused to perform certain executory contracts, against sums USPS owes Debtor for post-petition trucking services under those contracts. USPS proceeded by motion to lift the automatic stay in bankruptcy.[1] The bankruptcy court[2] denied that motion, the district court[3] affirmed, and USPS appeals. This appeal requires us to explore the interplay between the equitable doctrine of recoupment and the bankruptcy law of executory contracts as construed in NLRB v. Bildisco & Bildisco, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). We affirm.
 
 I.
 
 2
 USPS and Dewey entered into multi-year contracts for the shipment of mail from St. Louis to Kansas City, and from Kansas City to Milwaukee. The contracts require USPS to pay Dewey an annual contract rate in thirteen four-week installments. The contracts' General Provisions permit USPS to "deduct from the compensation otherwise due [Dewey] under this contract ... those amounts for which [Dewey] is accountable [for failure to perform in accordance with the contract]."
 
 
 3
 In July 1991, Dewey filed a petition to reorganize under Chapter 11 of the Bankruptcy Code. Initially, Dewey continued as debtor-in-possession to haul mail for USPS in accordance with the contracts, and USPS continued to make installment payments consistent with the contracts' terms. By September 1991, however, Debtor concluded it would no longer perform. It asked another company, Quick Trucking, Inc., to assume Dewey's obligations under the USPS contracts. Quick Trucking was willing to do so, but USPS refused to accept an assignment of the contracts. Debtor then notified USPS that it would promptly cease performance.
 
 
 4
 USPS subsequently solicited bids on six-month "emergency service" contracts for these mail truck routes. Quick Trucking was awarded the emergency contracts but at short-term rates substantially higher than the rates in the original contracts with Dewey. The costs incurred by USPS in awarding the substitute contracts, plus the higher trucking costs it would incur over the life of the substitute contracts, totaled approximately $27,000. Claiming this amount as damages for Debtor's refusal to perform, USPS moved to lift the automatic stay so that it could retain (recoup) $18,959.32 that would otherwise be paid to Debtor in the next installment payments under the breached contracts. The Merchants Bank, and later its successor, Boatmen's First National Bank of Kansas City, intervened to oppose USPS's motion because it threatens their security interest in Debtor's accounts receivable.
 
 
 5
 The bankruptcy court denied USPS's motion, concluding that USPS must instead pay any amounts due under the contracts for post-petition trucking services and file an unsecured claim against the bankruptcy estate for damages resulting from Debtor's failure to perform. The court reasoned: (i) the trucking contracts were executory when Dewey petitioned for Chapter 11 protection and therefore governed by Sec. 365; (ii) Dewey as debtor-in-possession rejected those contracts when it refused to perform; (iii) under Sec. 365(g)(1) and Sec. 502(g), a damage claim for rejection of an executory contract "must be administered through bankruptcy and receive the priority provided general unsecured creditors," Bildisco, 465 U.S. at 531; and (iv) USPS may not invoke the equitable doctrine of recoupment because the money owed Debtor for post-petition shipments and USPS's damage claim for rejection of the contracts "did not arise out of the same transaction."
 
 
 6
 USPS appealed to the district court, which affirmed on the ground that USPS has no right of recoupment because the claims of Debtor and USPS did not arise out of the same transaction. USPS now appeals to this court, arguing that Debtor did not reject the executory contracts before USPS invoked its contractual right to recoup; that prior to rejection Debtor and USPS were bound by the terms of those contracts, including USPS's right to recoup; and finally, that even if the contracts were rejected, USPS had an equitable right to recoup because the parties' claims arose from the same transaction.
 
 II.
 
 7
 The ultimate question in this case is whether USPS may invoke the equitable doctrine of recoupment to reduce its obligation to pay Debtor for post-petition trucking services. Unlike set-off, the limits of which are defined in Sec. 553, recoupment does not appear in the Bankruptcy Code. Rather, it is an equitable principle that allows a creditor in bankruptcy "to show that because of matters arising out of the transaction sued on, he or she is not liable in full for the [debtor's] claim." 4 Collier on Bankruptcy p 553.03, at 553-17 (15th ed. 1994).
 
 
 8
 Recoupment is a general doctrine not limited to bankruptcy litigation. See, e.g., Reiter v. Cooper, --- U.S. ----, ----, 113 S.Ct. 1213, 1218, 122 L.Ed.2d 604 (1993). In the bankruptcy setting, permitting a creditor to recoup a pre-petition claim by reducing its obligation to pay for a bankrupt's post-petition services raises serious concerns:
 
 
 9
 A fundamental tenet of bankruptcy law is that a petition for bankruptcy operates as a "cleavage" in time. Once a petition is filed, debts that arose before the petition may not be satisfied through post-petition transactions.... Any recoupment exception to this general principle perhaps should be narrowly construed.
 
 
 10
 In re B & L Oil Co., 782 F.2d 155, 158 (10th Cir.1986) (citations omitted). To prevent a bankrupt's creditors from using recoupment to gain unwarranted preferences, courts require that "the creditor ... have a claim against the debtor that arises from the same transaction as the debtor's claim against the creditor." In re NWFX, Inc., 864 F.2d 593, 597 (8th Cir.1989). To justify recoupment in bankruptcy, "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." In re University Medical Ctr., 973 F.2d 1065, 1081 (3d Cir.1992).
 
 
 11
 The claims that USPS seeks to offset in this case clearly arose out of the same contracts as Debtor's claims; the question is whether they arose out of the "same transactions." Not surprisingly, given the equitable nature of the doctrine, courts have refrained from precisely defining the same-transaction standard, focusing instead on the facts and the equities of each case. Prior recoupment cases have allowed bankruptcy creditors to offset pre-petition overpayments against a debtor's claim for post-petition work under the same contracts, see B & L Oil, 782 F.2d at 158-59; In re Mohawk Indus., 82 B.R. 174 (Bankr.D.Mass.1987); In re Midwest Serv. & Supply Co., 44 B.R. 262, 266 (1983) and to offset damages for pre-petition fraud in the inducement of a lease against a landlord-debtor's claim for post-petition rent, see In re Holford, 896 F.2d 176 (5th Cir.1990).
 
 
 12
 These cases suggest that USPS could recoup, for example, claims for overpayment or damage-in-transit arising from Dewey's pre-petition trucking services against Debtor's claims for post-petition services under the same contracts. But USPS's claim here is different--it stems from Debtor's failure to perform its future contractual commitments, a failure that is inextricably tied to its status as a Chapter 11 debtor. USPS argues that we can nonetheless decide the question under general principles of recoupment; it urges us to follow cases that have more or less equated "same transaction" with "same contract." Boatmen's argues with equal vigor that we should consider each trucking shipment, or at least each four-week installment period, a distinct transaction, much as the court in University Medical Center held that Medicare reimbursement payments in different years were not part of the same transaction for recoupment purposes. 973 F.2d at 1081-82. With these competing arguments rather nicely balanced in the abstract, we conclude that the question requires a closer look at the Bankruptcy Code's treatment of executory contracts.
 
 III.
 
 13
 The parties agree that when Dewey petitioned for Chapter 11 protection, its contracts with USPS were executory, that is, they were contracts "so unperformed that the failure of either [party] to complete performance would constitute a material breach excusing the performance of the other." Cameron v. Pfaff Plumbing & Heating, Inc., 966 F.2d 414, 416 (8th Cir.1992). A debtor-in-possession such as Dewey may, with the court's approval, assume or reject an executory contract. See Secs. 365(a), 1107(a). While a Chapter 7 trustee must assume an executory contract within sixty days or it is deemed rejected, see Sec. 365(d)(1), a Chapter 11 debtor may assume or reject at any time prior to confirmation of the reorganization plan, unless the court has ordered that the decision be made within a specified period. See Sec. 365(d)(2); 2 Collier on Bankruptcy p 365.03, at 365-27 to -30. This additional latitude reflects the fact that, while the Chapter 11 debtor normally remains in business during the proceeding, "the authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." Bildisco, 465 U.S. at 528, 104 S.Ct. at 1197.
 
 
 14
 Sections 365(g)(1) and 502(g) provide that, when an executory contract is rejected, "[d]amages on the contract that result from the rejection of an executory contract ... must be administered through bankruptcy and receive the priority provided general unsecured creditors." Bildisco, 465 U.S. at 531, 104 S.Ct. at 1199. In other words, even if the debtor rejects long after commencement of the Chapter 11 proceeding, the Bankruptcy Code declares that the damage caused by rejection is a pre-petition claim, so that it will not burden the reorganizing enterprise.
 
 
 15
 In this case, when USPS asserted its right to recoup in September 1991, Debtor had informed USPS, orally and by letter, that it was ceasing performance under the contracts. Noting that Debtor "[n]o doubt ... will at some point reject these contracts" (which it subsequently did), the bankruptcy court assumed for purposes of USPS's recoupment motion that the contracts had been rejected. We agree with USPS that this was error. Under Sec. 365(a), rejection is "subject to the court's approval," and a debtor seeking such approval must proceed by motion upon reasonable notice and opportunity for hearing. See Fed.R.Bankr.P. 6006(a), 9014. Because there was no motion to reject the contracts and no court approval at the time USPS sought to recoup, USPS's recoupment claim for nonperformance arose prior to rejection. See University Medical Ctr., 973 F.2d at 1076-79; In re Whitcomb & Keller Mortgage Co., 715 F.2d 375, 380 (7th Cir.1983); In re Polysat, Inc., 152 B.R. 886, 890-91 (Bankr.E.D.Pa.1993).
 
 
 16
 After a debtor commences a Chapter 11 proceeding, but before executory contracts are assumed or rejected under Sec. 365(a), those contracts remain in existence, enforceable by the debtor but not against the debtor. See Bildisco, 465 U.S. at 532, 104 S.Ct. at 1199; In re Monarch Capital Corp., 163 B.R. 899, 907 (Bankr.D.Mass.1994); In re Gunter Hotel Assocs., 96 B.R. 696, 699-700 (Bankr.W.D.Tex.1988) (collecting authorities). That was the situation here while Dewey as debtor-in-possession continued to haul mail under the contracts.[4] USPS argues that, when a debtor "forces the non-debtor party to continue to perform, both parties are bound by the terms of the contract," including in this case the contractual recoupment provisions. As Bildisco makes clear, that is not the law:
 
 
 17
 If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract.
 
 
 18
 465 U.S. at 531, 104 S.Ct. at 1199 (emphasis added) (citations omitted). Thus, USPS is entitled to a post-petition administrative claim only to the extent it has benefitted the debtor-in-possession in operating the business. In re Jartran, 732 at 587. USPS's recoupment claim is not of that nature. Rather, USPS seeks damages for the Debtor's failure to perform its executory contractual commitments.
 
 
 19
 "Where no benefits are received by the bankrupt estate or its representative under the contract, and the contract is not assumed, the creditor's claim is not entitled to priority, although of course, upon rejection, the creditor may file a general claim against the estate." American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A., 280 F.2d 119, 124-25 (2d Cir.1960) (citations omitted). That is the nature of USPS's recoupment claim in this case. Moreover, because an unassumed executory contract is not enforceable against the Chapter 11 debtor, "the nondebtor party cannot terminate the contract by reason of the debtor's defaults thereunder." In re Monarch Capital Corp., 163 B.R. at 907. In other words, USPS had no claim at all for post-petition nonperformance until the contracts were rejected under Sec. 365(a), at which point its remedy for breach of the executory portions of the contracts was governed by Sec. 365(g)(1) and Sec. 502(g). For these reasons, although we arrive at the conclusion by a somewhat different path, we agree with the bankruptcy court that USPS's claim is one that, by reason of Sec. 365(g)(1) and Sec. 502(g), must be administered through bankruptcy and receive a general unsecured creditor's priority.
 
 IV.
 
 20
 When the recoupment issue is viewed from the perspective of the Bankruptcy Code's treatment of executory contracts, it becomes clear that USPS's claim was properly denied. Under the contracts in question, USPS obtained favorable trucking rates by making long-term commitments to the trucker, Dewey. For Dewey's Chapter 11 reorganization to succeed, it needed a reasonable period as debtor-in-possession to determine whether its reciprocal commitments to USPS should be assumed or rejected. During that period, Debtor continued in business, and those who benefitted that on-going business were rewarded with post-petition administrative claims. However, once the contracts were rejected, any damages caused by rejection, such as those asserted by USPS in this case, are treated as pre-petition unsecured creditor claims. In these circumstances, it would frustrate the basic purpose of Sec. 365 in a Chapter 11 proceeding to allow USPS to reduce the amount it owes to Debtor for post-petition services by offsetting claims that Sec. 365 has explicitly removed from the post-petition scene.
 
 
 21
 "The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources." Bildisco, 465 U.S. at 528, 104 S.Ct. at 1197. We may not construe the equitable doctrine of recoupment so as to frustrate both the specific commands of Sec. 365(g)(1) and Sec. 502(g), and this overriding purpose of Chapter 11. The judgment of the district court is affirmed.
 
 
 
 *
 The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 See 11 U.S.C. Sec. 362(a)(7). For convenience, subsequent Bankruptcy Code citations will be by section number only
 
 
 [2]
 The HONORABLE ARTHUR B. FEDERMAN, United States Bankruptcy Judge for the Western District of Missouri
 
 
 [3]
 The HONORABLE FERNANDO J. GAITAN, JR., United States District Judge for the Western District of Missouri
 
 
 [4]
 If USPS and Dewey had negotiated new post-petition contracts containing recoupment provisions, USPS would be entitled to relief from the automatic stay because Debtor's liabilities under post-petition contracts, like its liabilities under assumed executory contracts, are expenses of administration. See Sec. 503(b)(1)(A); Bildisco, 465 U.S. at 531-32, 104 S.Ct. at 1199; In re Jartran, Inc., 732 F.2d 584, 586-91 (7th Cir.1984). However, there is nothing in the record to suggest that USPS and Dewey negotiated new contracts after Dewey filed for Chapter 11 protection. Dewey simply continued to haul mail under the executory contracts, and USPS continued to make installment payments under those contracts