**In re PAYLESS CASHWAYS, INC., Debtor.**

**No. 01–42643.**

United States Bankruptcy Court, W.D. Missouri.

Jan. 22, 2004.

Benjamin F. Mann, Kathryn B. Bussing, Richard M. Beheler, Blackwell Sanders Peper Martin, Michelle A. Fox, Regency Financial Corporation, Legal Department, Kansas City, MO, Gary D. Gilson, Rebecca E. Bell, Dallas, TX, for Payless Cashways, Inc.

Tampa International Forest Products, Inc., pro se, Great Southern Wood Preserving, Inc., pro se, Arling Lumber, Inc., pro se, Orepac Building Products, pro se, Thomas G. Stoll, Kansas City, MO, for Defendants.

Arthur A. Chaykin, Polsinelli Shalton & Welte, Benjamin F. Mann, Kathryn B. Bussing, Richard M. Beheler, Scottie S. Kleypas, Terrance M. Summers, Heather B. Wolesky, Traci R. Chorny, Paralegal, Blackwell Sanders Peper Martin, Thomas

M. Franklin, Kansas City, MO, Janet Davis Baker, Overland Park, KS, for Silverman Consulting, Inc.

Jerry L. Phillips, Paula C. Acconcia, Sherri L. Wattenbarger, Office of the U.S. Trustee, Terrance M. Summers, Blackwell Sanders Peper Martin LLP, Michael D. Doering, Paul M. Hoffmann, Stinson Morrison Hecker LLP, Lisa A. Epps, Scott J. Goldstein, Spencer Fane Britt & Browne LLP, Kansas City, MO, John R. Rizzardi, Cairncross & Hempelmann, Seattle, WA, Jackson & Langford Wholesale Lumber, Inc., pro se, Bryan S. Mick, Croker, Huck, Hasher, Dewitt, Anderson & Gonderinger, LLC, Omaha, NE, Jeffrey Lehms, pro se, Pacesetter Corporation, pro se, Ethan C. McKinney, Tuesley & Hall, LLP, South Bend, IN, Roger L. Tarbutton, Johnson Co. Legal Dept., Olathe, KS, George E. Dowlen, Perdue, Brandon, Fielder, Collins, et al., Amarillo, TX, for Interested Parties.

Brett D. Anders, Christian J. Kelly, Daniel J. Flanigan, Gerald W. Brenneman, James E. Bird, Polsinelli, Shalton & Welte, PC, Kansas City, MO, for Official Committee of Unsecured Creditors.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Silverman Consulting, Inc. (Silverman), the Chapter 11 trustee for debtor Payless Cashways, Inc. (Payless) objected to the proof of claim filed by Zurich America Insurance Company (Zurich). The claim was filed as an administrative expense in the amount of $1,679,991.00. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will overrule Payless' objection to Zurich's administrative expense claim.

### FACTUAL BACKGROUND

Zurich provided guaranteed-cost workers' compensation, automobile liability, and general liability insurance policies to Payless from May 1, 1998, to May 1, 2001. Payless provided Zurich with a letter of credit as security for the policies. The policies were minimum-cost policies with further premiums to be due and owing as determined by an audit at the end of each policy period. Zurich conducted a post-coverage audit for the term of May 1, 1998, to May 1, 2001, and the balance due following the audit was $6,644,335.00.

Payless also contracted with Zurich for insurance coverage for the policy period May 1, 2001, through May 1, 2002. The minimum premium due under these policies was $4,033,190.00, with one monthly installment in the amount of $199,040.00 and eleven monthly installments in the amount of $169,517.00. The balance was due on demand, but in any event within four years of the commencement date. Payless paid $169,517.00 of the $199,040.00–May 1, 2001, installment and has made no further payments.

On June 4, 2001, Payless filed a Chapter 11 bankruptcy petition. At the time of filing, therefore, Payless owed Zurich the sum of $6,644,335.00 for the earlier policies and $3,863,673.00[1] as the remaining balance on the current policies. As of No-

---

1. The $4,033,190.00 minimum premium minus the payment of $169,517 equals $3,863,673.00.

vember of 2001 Zurich held a letter of credit in the amount of $8,828,318.00. On November 14, 2001, Zurich drew the full amount of the letter of credit and applied $6,644.335.00 to the amount due on the earlier policies and $2,183,983 to the current policies.

On December 14, 2001, Zurich filed a motion for relief from the automatic stay to allow it to cancel the current policies. As of that date, Payless had not filed a motion to either assume or reject the policies, and Zurich had not filed a motion to force Payless to either assume or reject the policies. Both parties agree that the policies are executory contracts. On February 11, 2002, this Court entered an Order allowing Zurich to terminate the policies, and on February 27, 2002, Zurich did so. It is undisputed that Payless neither assumed nor rejected the policies prior to termination.

Zurich never completed its post-coverage audit of what turned out to be the term from May 1, 2001, through February 27, 2002. Silverman's insurance broker, however, estimated the value of the insurance provided, based on Zurich's exposure, and applied the same factors Zurich would have applied in conducting a post-coverage audit. Zurich concedes that, due to the liquidation of all of Payless' assets, the value of the insurance provided was no more than $2,188,894.51 for that policy period.

On February 7, 2002, Zurich filed a proof of claim seeking $1,679,691.00 as an administrative claim for post petition insurance coverage for the policy period of May 1, 2001 to April 30, 2002. That figure represents the minimum payment of $4,033,190 due under the current policies, less the payment of $169,517.00 applied to the May, 1, 2001, payment, less the application of $2,183,983 from the letter of credit. Silverman objected to the proof of

claim. On December 22, 2003, this Court held a hearing.

Silverman argues that Payless is only liable for the value of the services provided, regardless of the minimum premium due under the policy, and that Zurich has been paid in excess of that amount. Silverman further argues that because Zurich canceled the policies, the minimum premium due based on the policies is no longer enforceable. Silverman also claims that it is entitled to a present value discount in the amount of $191,822.00 on the payment made on November 14, 2001, because Zurich received full payment in less than four years.

Zurich argues that, because these are minimum-cost policies, it is entitled to the minimum premium due under the contract. Alternatively, Zurich claims that it terminated the policies because of Payless' breach of contract, therefore, it is entitled to the value of the insurance plus breach of contract damages. Zurich concedes that the breach-of-contract damages are a prepetition claim, while the value of the insurance provided is a post petition claim. Because I find that the entire amount claimed by Zurich is due for post petition services, I need not reach its claim for prepetition damages.

### DISCUSSION

■ I will deal only briefly with Silverman's argument that it is entitled to a present value discount, and Zurich's argument that it is entitled to breach of contract damages. I find no merit to Silverman's claim that the terms of a terminated contract are no longer enforceable against the party whose default resulted in the termination.

■ Silverman offers no precedent for its claim that Zurich was unjustly enriched on November 14, 2001, when it drew on

the letter of credit. Silverman states that the premiums for each policy year were to be paid over a four-year period. Zurich, on the other hand, claims that Payless was obligated to pay regularly-scheduled premium installments with the balance due on demand. Neither party offered the policies themselves. Each does agree that, prior to the bankruptcy filing, the final cost of insurance for each policy period could only be calculated following a post-coverage audit. From this information, I can only conclude that the policies did not provide that the premiums were due over a period of four years. Rather, Payless had the option of amortizing the balance due at the conclusion of the post-coverage audit over a period of four years. Absent any precedent, or language in the policies, stating that Payless would be entitled to a present value discount upon full payment in less than four years, I find no basis for such a discount. As Zurich claimed, the amounts due under the policies were currently due and owing and, absent the bankruptcy filing, Zurich could have sued to recover the full amount.

Zurich argues that it is entitled to the minimum premium as an administrative expense because these policies were guaranteed-cost policies. In its motion for relief from stay Zurich sought permission to terminate the policies because Payless had failed to pay the monthly minimum premiums.[2] The motion for relief stated that Zurich had applied the balance of the letter of credit, $2,183,983.00, to "the balance owed for the May 1st installment, to the June 1st installment and to the premium payable on demand."[3] Upon demand, Payless was obligated under the policies to pay the sum of $3,007,802.00.[4] In its response to the motion for relief, Silverman did not challenge this application of the letter of credit, and it did not contend that Zurich's prior application of the letter of credit, first to the earlier policies, and then to the current ones, was a violation of either the automatic stay or the terms of the contract between the parties. Nor did Silverman contend at that time that it was entitled to a present value discount for application of the letter of credit to the demand payment. In any event, Silverman would have had no basis for doing so. Zurich had a contractual right to apply the letter of credit to the prepetition demand payment, which it secured.

In my Order granting Zurich relief I found that Zurich had agreed to provide coverage in exchange for a minimum premium of $4,033,190.00. I also found that the entire amount had not been paid, and likely would not be paid. I, therefore, found that, subject to certain notice requirements, the policies contained cancellation clauses for the non-payment of premium. Since Payless was in default for the non-payment of premiums, Zurich was entitled to relief from the automatic stay in order to pursue its right to cancel the policies under applicable state law.[5] That cancellation does not, however, relieve Payless of its obligation for the insurance coverage that Zurich provided post petition. Upon cancellation, and based on the prior application of the letter of credit, there remained due and owing on the current policies the sum of $1,679,691.00. Because of application of the letter of credit that amount relates solely to post petition services. The question is whether all of that obligation is entitled to administrative expense priority treatment.

2. Doc. # 1173, filed December 14, 2001.

3. *Id.*

4. *Id.*

5. Doc. ## 1396 and 1397.

■ Section 503(b)(1)(A) allows an administrative expense claim for the actual costs of preserving the estate:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.[6]

Providing insurance coverage post petition entitles the insurer to an administrative expense claim.[7] The parties do not dispute that Zurich provided insurance coverage post petition. Neither do they dispute that Payless failed to assume or reject the policies. In *United States of America on Behalf of the United States Postal Service v. Dewey Freight System, Inc. (In re Dewey Freight System, Inc.),*[8] the court held that, after a debtor commences a Chapter 11 proceeding, but before executory contracts are assumed or rejected, those contracts remain in existence "enforceable by the debtor but not against the debtor."[9] But if the debtor chooses to receive the benefit of such a contract post petition, it is obligated to pay for doing so. As the United States Supreme Court explained in *NLRB v. Bildisco & Bildisco:*

> If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligat-

ed to pay *for the reasonable value of those services,* which, depending on the circumstances of a particular contract, may be what is specified in the contract.[10]

That is exactly the case here. Payless did not assume or reject the policies. The policies remained in effect because the automatic stay prevented Zurich from enforcing the terms of the policies against Payless until, or unless, Payless assumed them. Instead, Zurich elected to seek relief from the automatic stay in order to terminate the policies.[11]

■ Thus, the issue is the reasonable value of the services provided by Zurich to Payless during the post petition period pending Payless' decision to assume or reject the policies, and prior to the date when Zurich obtained Court permission to terminate the policies. If the reasonable value of the services turned out to be less than the amount owed for them under the contract, only the portion representing the reasonable value could be treated as an administrative expense. But here, the value of the services provided post petition is larger than the amount claimed due by Zurich under the policies. Both parties agree that the value of the insurance provided by Zurich for the policy term of May 1, 2001, through February 27, 2002, was $2,188,894.51. Payless filed its Chapter 11 petition on June 4, 2001, therefore, Zurich provided 34 days of coverage prepetition (May 1, 2001, until June 4, 2001) and 269

---

**6.** 11 U.S.C. 503(b)(1)(A).

**7.** *Metropolitan Life Ins. Co. v. Sharon Steel Corp. (In re Sharon Steel Corp.),* 161 B.R. 934, 937 (Bankr.W.D.Pa.1994).

**8.** 31 F.3d 620 (8th Cir.1994).

**9.** *Id.* at 624 (*citing NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 532, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984)).

**10.** *Id. (quoting NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 532, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984)).

**11.** *See Id.* at 625 (stating that an unassumed executory contract is not enforceable against a Chapter 11 debtor and the nondebtor party cannot terminate the contract because of debtor's defaults).

days of coverage post petition (June 4, 2001, until February 27, 2002). The per diem value of the insurance coverage is $7,224.07 ($2,188,894.51 divided by 303 days equals $7,224.07). The value of the insurance coverage provided post petition is $1,943,276.13 ($7,224.07 times 269 days equals $1,943,276.13). Since the value of the services provided post petition is in excess of the amount due to Zurich under the policies, Zurich is entitled to the contract amount as an administrative claim. I will, therefore, overrule Payless' objection to the administrative claim filed by Zurich in the amount of $1,679,691.00.

An Order in accordance with this Memorandum Opinion will be entered this date.