In re FIFTY BELOW SALES & MARKETING, INC., Debtor.

Nauni Jo Manty, Chapter 11 Operating Trustee for the Estate of Fifty Below Sales & Marketing, Inc., Ari Network Services, Inc., and Project Viking II Acquisition, Inc., Plaintiffs,

v.

Ahmad Helal, Ben Moore, Jonathan D. Napoli, Aric Toboleski, Jace Tudor, and Local Focal, Inc., d/b/a Net Driven, Defendants.

Bankruptcy No. 12–50900.
Adversary No. 13–5004.

United States Bankruptcy Court,
D. Minnesota.

April 12, 2013.

Michael F. McGrath, Ravich Meyer Kirkman & McGrath Nauman, Minneapolis, MN, for Debtor.

James A. Lodoen, Lindquist & Vennum P.L.L.P., Minneapolis, MN, for Plaintiffs.

Henry T. Wang, Gray Plant Mooty Mooty & Bennett PA., Minneapolis, MN, for Defendants.

## MEMORANDUM TO ORDER OF MARCH 29, 2013, GRANTING PLAINTIFFS' MOTION FOR ABSTENTION AND REMAND

GREGORY F. KISHEL, Chief Judge.

On March 29, 2013 this court entered an order granting the Plaintiffs' motion for abstention and remand. Via that order, certain of the requests for relief in this lawsuit were returned to the Minnesota State District Court for the Sixth Judicial District, St. Louis County, the judicial forum where suit was commenced. This memorandum sets forth the rationale for that order, for the benefit of the presiding judge in the state court and the parties.[1]

### INTRODUCTION

This litigation is a product of the bankruptcy case of Fifty Below Sales & Marketing, Inc. ("Fifty Below"). Fifty Below was a Duluth-based purveyor of electronic-format sales and marketing services to business clients, including the design, construction, and maintenance of websites for the on-line sale of products and services. It had large difficulties with the federal and state taxing authorities. The taxing authorities' claims had accrued from Fifty Below's delinquency on various taxes, including a major failure to remit employee withholding. Fifty Below filed a voluntary petition under Chapter 11 on August 29, 2012.

In short order, the United States of America (on behalf of the Internal Revenue Service) moved for the appointment of a trustee pursuant to 11 U.S.C. § 1104(a). The motion was granted without objection from Fifty Below. Plaintiff Nauni Jo Manty ("Manty") was appointed as Operating Trustee. Over the fall of 2012, Manty oversaw the continuation of Fifty Below's operations as a going concern. She also initiated the process toward a sale of Fifty Below's assets free and clear of liens, pursuant to 11 U.S.C. § 363(f).

An auction was held under court-approved procedures. Manty named Plain-

---

1. At the hearing on the motion for abstention and remand, the Plaintiffs were represented by James A. Lodoen and Daniel N. Sacco.

Plaintiff Nauni Jo Manty also appeared personally and by Michael S. Dove, her attorney. The Defendants appeared by Henry T. Wang.

tiffs ARI Network Services, Inc. and Project Viking II Acquisition, Inc. (collectively "ARI"[2]) and Emerald Connect, Inc. as the successful bidders for separate blocks of Fifty Below's assets. The blocks consisted of distinct groupings of contractual and business relationships within Fifty Below's diversified customer base, plus the associated intellectual property, data, and information. ARI was to purchase Fifty Below's "Retail Services Division."[3]

Manty moved for approval of the sale and for authority to close it. The United States and an unsuccessful bidder objected to the proposed sale. At the hearing, ARI voiced its willingness to maintain a large operational presence in Duluth, including the continuing local employment of over 100 of the Debtor's employees. After a lengthy evidentiary presentation, the court granted the motion and authorized Manty to sell the Retail Services Division to ARI.[4]

Manty and ARI closed their sale on November 28, 2012. A structure to effectuate the sale was created through various agreements and Manty's use of the trustee's remedies of assumption and assignment of executory contracts. Through the use of that structure, ARI took over the block of going-concern business that it had purchased from the bankruptcy estate.

### THIS LITIGATION

On December 28, 2012, the Plaintiffs commenced this lawsuit by filing their complaint in the Minnesota State District Court for the Sixth Judicial District, St. Louis County.

The individual defendants are all former employees of Fifty Below. They resigned their employment with Fifty Below several weeks before Manty closed the sale to ARI. Corporate defendant Local Focal, Inc., d/b/a Net Driven, was a competitor with Fifty Below, and is a competitor with ARI, in the market of Fifty Below's Retail Services Division.[5] Net Driven hired all of the individual defendants almost immediately after they left Fifty Below's employ.

The Plaintiffs' complaint is based on the circumstances under which the individual defendants defected to Net Driven and the consequences that the Plaintiffs say resulted from wrongdoing on the Defendants' part during and after the defection. The Plaintiffs accuse the Defendants of using two unlawful means to lure away customers that had had established business relationships with Fifty Below: the individual defendants' violation of covenants of noncompetition, by their taking jobs with a direct competitor; and the use of proprietary and confidential information developed by Fifty Below that ARI had purchased from the bankruptcy estate for its own, exclusive use. The allegation was that Net Driven had obtained the information via actions by the individual defen-

---

**2.** Plaintiff Project Viking II Acquisition, Inc. is a wholly-owned subsidiary of Plaintiff ARI Network Services, Inc.

**3.** The customers in this grouping did business in various wholesale and retail sectors— "power sports," automotive parts, automobile tires, home and durable medical equipment, and pools and spas. Fifty Below had numerous customers in each industry.

**4.** ARI's intentions were a major factor in the overruling of the objections to the sale. The objecting bidder had offered slightly more in cash, but had not articulated such a commitment to Manty.

**5.** The relevant part of Net Driven's own market presence apparently is in the auto parts and tire sector. It expressed an interest in bidding for Fifty Below's assets, and gained access to the "data room" maintained for potential offerors pursuant to the court-approved procedures for the sale. Net Driven did not end up submitting a bid to the Trustee, however.

dants, in violation of their separate covenants of nondisclosure.[6]

On those basic fact allegations, the Plaintiffs plead eight counts for relief. The legal theories all sound under state law. The Plaintiffs seek injunctive relief against future breach of the employment covenants. They also seek injunctive and monetary relief against all Defendants on other theories. Most of those touch in some way on the employment agreements, but all are premised on Minnesota state common law and statute: tortious interference, breach of duty of loyalty, breach of fiduciary duty, conversion, misappropriation of trade secrets, and unfair competition.

The Plaintiffs immediately (December 28, 2012) filed a motion for a temporary restraining order. The motion was submitted to the Honorable Eric Hylden, the presiding judge, who considered it as one made *ex parte*. On December 31, 2012, he denied the motion.

Taking a lead from Judge Hylden's order, the Plaintiffs scheduled a hearing on a motion for a temporary injunction[7] for January 15.

Right around that time, something came to light during ARI's review of records on Fifty Below's servers: on October 24, 2012, Defendant Jonathan D. Napoli had downloaded a spreadsheet of large data content from Fifty Below's server and sent it to his personal, private email account. At that time, Napoli was still an employee of Fifty Below. (He departed for Net Driven's employ very soon after.) The spreadsheet contained a broad array of information regarding active customers in the Tire and Automotive Group within Fifty Below's Retail Services Division; it included contract pricing, contract origination and ending by date, and the like. Napoli's act is uncontested, as a matter of fact—the point is admitted, actually, by the Defendants through their attorney for this litigation.

In short order, the hearing was recalendared to January 28 and the Plaintiffs augmented the record for their motion after their discovery of Napoli's download.[8]

On January 18, 2013, Judge Hylden acted *ex parte* to issue a temporary restraining order on the request in the Plaintiffs' updated motion. He did so on his holding that the newly-discovered evidence warranted a restraint on the Defendants' contact with Fifty Below's customers pending the January 28 hearing.

Judge Hylden convened the hearing on January 28. He heard the parties for an hour; directed further briefing; and took the Plaintiffs' motion for a temporary injunction under advisement.

## THE REMOVAL; THIS MOTION

On January 30, 2013, counsel on behalf of all of the named Defendants other than Aric Toboleski ("the Removing Defendants") filed a Notice of Removal with this court. They did this two days after the hearing before Judge Hylden and while he still had the Plaintiffs' motion under advisement. Under it, they purported to remove a portion—but not all—of this litigation to this court, under color of 28

---

**6.** For brevity, the two sorts of subsidiary covenants will be collectively termed "the employment covenants." This is to be distinguished from reference to "the employment agreements," which will denote the employer-employee contracts as a whole.

**7.** *See* Minn. R. Civ. P. 65.02.

**8.** The sequence of these events is not entirely clear from the current record; but their precise order is not really relevant.

U.S.C. § 1452(a).[9] The identified subject of the removal was Counts One, Two, Three, Six, and Eight under the Plaintiffs' complaint. The Removing Defendants' counsel categorized these counts as the ones premised substantively on allegations of breach of the employment agreements.

A status conference was convened in this court on February 14, 2013, to address the posture of the removal. Counsel for the Removing Defendants was questioned closely on the dubious merit of removing only a portion of the controversies in suit. He was pointed to the anomaly and difficulty it caused for the disposition of any count by either of the two judicial fora that now presided over a lawsuit that had been unitary.[10] Counsel's response was that this court should address at least one threshold issue on the removed counts be-

fore a remand to the state court. He characterized that issue as requiring the application of bankruptcy law.

For the Removing Defendants, the target issue was the identification of the party, as among the named Plaintiffs, that now had standing to directly enforce the full bank of employer's rights under the individual Defendants' employment agreements with Fifty Below. They made much of the fact that the estate's sale of Fifty Below's assets to ARI had been made without a formal grant of court approval for the assumption of those employment agreements by Manty as Trustee and their assignment to ARI. The Removing Defendants' counsel insisted that this was a keystone issue that had to be resolved before any court reached the substantive merits.[11]

9. This statute authorizes removal to the bankruptcy jurisdiction of the federal courts. It provides as follows:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under [28 U.S.C. § ] 1334....

Once removed, the action comes under the reference of all bankruptcy cases and proceedings from the district court to the bankruptcy judges for the district, 28 U.S.C. § 157(a), which is accomplished by Loc. R. Bankr.P. (D.Minn.) 1070–1. Because the bankruptcy judges for a district constitute "a unit of the district court to be known as the bankruptcy court for that district," 28 U.S.C. § 151, the removal is made "directly" to the bankruptcy court. This also comes about by operation of various procedural rules and their definitions. *In re Fulda Ind. Co–op.*, 130 B.R. 967, 976 (Bankr.D.Minn.1991).

10. One of the anomalies was the status of the previously-granted temporary restraining order. On the same day as the status conference, Judge Hylden vacated his temporary restraining order. The vacating was a direct

consequence of the act of removal; Judge Hylden concluded that jurisdiction over the counts that had been "central to ... [the] previous temporary restraining order" had been taken from the state court. This, of course, left things in something of an uproar between the two sides. But, the lapse of the earlier measure to hold the status quo was addressed when this court issued a temporary restraining order to mirror the earlier one, on motion of the Plaintiffs [Dkt. No. 14].

11. The Notice of Removal itself [Dkt. No. 1] made the point more clearly. There, the Removing Defendants noted that Manty had filed a motion for approval of her assumption and assignment of the employment agreements, but no further action had been taken toward the grant of that relief. (The individual defendants had strenuously objected to the motion, on the ground that the employment agreements ceased to be "executory" within the meaning of 11 U.S.C. § 365(a) after they left the employ of Fifty Below.) After the lawsuit at bar was started in the state court, Manty withdrew the motion [BKY 12–50900, Dkt. No. 130]. The Removing Defendants then stated:

> Nonetheless, Plaintiffs in the State Court Action have asserted that ARI Network Services, Inc. and its subsidiaries (collectively "ARI") may bring the Employment Agree-

It was not clear how this was to work into the judicial consideration of a temporary injunction. However, the defense's agenda clearly was to argue that *none* of the Plaintiffs now had standing to enforce the covenants of confidentiality and noncompetition.

Any removal from a state court to a federal court creates the possibility of abstention and remand. In the order for the status conference, the parties were directed to address that. The Plaintiffs did so by filing a motion for abstention and remand on February 13. At the status conference, the pendency of that motion was noted; so further proceedings on the Removing Defendants' initiative were deferred pending a ruling on the question of forum. The motion [Dkt. No. 7] was heard on March 6 and granted on March 29. This Memorandum is entered in connection with the grant.

### ABSTENTION AND REMOVAL: MERITS OF REQUEST

■ Removal to a federal court pursuant to statute transfers a controversy in suit from one judicial forum to another. For matters removed to the federal bankruptcy jurisdiction, the mechanism for restoring the action to the original forum is remand pursuant to 28 U.S.C. § 1452(b):

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order ... remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals

under [28 U.S.C. §§ ] 158(d), 1291, or 1292 ... or by the Supreme Court of the United States under [28 U.S.C. § ] 1254....

Augmenting this raw power to send it back, "on any equitable ground," is the substantively-oriented power to abstain from entertaining and deciding specific claims, defenses, or issues, that may be raised in cases and proceedings otherwise within the bankruptcy jurisdiction:

> (1) ... nothing in [28 U.S.C. § 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under [the Bankruptcy Code] or arising in or related to a case under [the Bankruptcy Code].
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under [the Bankruptcy Code] but not arising under [the Bankruptcy Code] or arising in a case under [the Bankruptcy Code], with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under [28 U.S.C. § 1334], the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c). When requests for both relief are presented in tandem, abstention is the logical one to consider first.[12]

---

ment Claims in the State Court Action. Most specifically, stating that "ARI has the right to bring the claims related to the Former–Employee Defendants' breach of the confidentiality and non-compete provisions in their Employment Agreements in its own name.... ARI obtained the rights it

now seeks to enforce because the benefits of the restrictive covenants at issue are transferable in an asset purchase."
Notice of Removal, ¶ 6.

12. In one view, "[f]or all practical purposes, the considerations are virtually the same for remand and abstention. Remanding a pro-

■ These, however, are structural abstractions. Before getting to them, it is necessary to identify which of the parties' more basic substantive theories are still in dispute. As to that, things have changed since the Plaintiffs first sued in the state court.

The situation at that time was marked by the cumulation of several events. The individual defendants had all resigned their employment with Fifty Below. After that, the bankruptcy estate sold the going concern; Manty ceased her active operation of Fifty Below's business. ARI received its share of Fifty Below's assets and succeeded to the active operation, without the individual defendants in tow as current employees.

Based on these circumstances alone, the Removing Defendants would have *all* of the Plaintiffs barred from enforcing the employment covenants against the individual defendants. They would also have them barred from any relief against Net Driven that was premised on an alleged breach of the employment covenants. Their rationale is largely spelled out in their submissions on this motion. Any gaps are readily filled in from simple logic.

Success on this theory, however, would require a threshold ruling that the right to compel compliance with the employment covenants, if any remained, still lay in the bankruptcy estate. The Removing Defendants would have that ruling made on the basis of only two circumstances: Manty did not pursue her motion under § 365 in this court, and hence never formally assumed and assigned the employment agreements to ARI; and the bill of sale for the estate's transfer to ARI excluded from that transfer, various things described as "assets" that were related to Fifty Below's past engagement of employees, directors, independent contractors, or agents.[13]

But, as a matter of logic, this decisive blow to the Plaintiffs' claim would require the adoption of three other, interrelated propositions. The Removing Defendants articulate these only in part, but they all are essential components for a rationale in their favor.

The first is that the bankruptcy estate could not transfer *any* of the benefits of

---

ceeding is just a form of abstention." *In re Hanson Industs., Inc.*, 83 B.R. 659, 666 n. 10 (Bankr.D.Minn.1988). Given the tighter focus of the considerations under 28 U.S.C. §§ 1334(c), it seems more accurate to treat abstention as preliminary to the more functional act of remand—a milder act of declining to entertain a controversy, before the overt ejection of it from the forum of removal.

13. The "Excluded Assets" are itemized in Schedule B of the Bill of Sale to ARI. The relevant provision, on which the Removing Defendants rely, is:

> Any and all programs, contracts, policies or practices which provide benefits to any current or former employee ... of the Seller, ... who performs or performed services primarily for the benefit of the Seller, ... including, without limitation, any pension, thrift, savings, profit sharing, retirement, bonus, incentive, health, dental, death, accident, disability, stock purchase, stock option, stock appreciation, stock bonus, executive or deferred compensation, hospitalization, "parachute," severance, vacation, sick leave, fringe or welfare benefits, any employment or consulting agreement or arrangement that contains any severance obligation of any kind, "golden parachutes," collective bargaining agreements, "employee benefit plans" ... employee manuals, or written or binding oral statements of policies, practices or understandings relating to employment.

The Bill of Sale is found in Part 2.1 of 6 to Exhibit A of the Notice of Removal [Dkt. No. 1] and the relevant pages are numbered 2–4 (main text, Bill of Sale) and 32 (Schedule B) in the CM/ECF pagination. (As an aside, the described things seem to be more in the nature of *liabilities* or *obligations* of Fifty Below attendant to employment relationships, and not "assets.")

the employment covenants to ARI without formally assuming and assigning the employment agreements. The Removing Defendants insist that this had to be done under § 365 as to the entirety of the employment agreements, and not in parts—*cum onere*, in their attorney's oft-used phrase.[14] The second is that the benefit and protections of the employment covenants cannot in any way be severed from the employment agreements as a whole, as a matter of non-bankruptcy law. The third is that the benefit of binding present or past employees to the employment covenants could follow only through the direct operation of the employment agreements as a whole—and only through an ongoing, functioning relationship involving an employer and the individual defendants as employees that spanned the sale of the going concern.

The Removing Defendants' attorney did not articulate these propositions quite that pointedly, but it is clear that his clients sought rulings from this court to that effect, *in the context of the removal.* And in the backdrop, they would have the resolution of the issue of standing made, and made only, by "review[ing] interpret[ing], and analyz[ing] what has already transpired in [Fifty Below's Chapter 11] case pursuant to the Sale Order, Assumption Order, Motion to Assume, Bill of Sale, and the Transition Agreement." They insist that "[t]his court is in the best possible position to interpret its Sale Order and Assumption Order, as well as the closing documentation that the Trustee and ARI executed pursuant to the authority given by the Sale Order." [15]

But, this entreaty does not recognize that only the first foundational proposition is governed by bankruptcy law, i.e., the application of 11 U.S.C. §§ 363 and 365. The other three propositions are governed exclusively by state law, the common-law regulation of employment covenants like the ones in question here. It is odd that the Removing Defendants do not recognize that nuance. There are two different reasons why it is odd.

■ First: the Plaintiffs' initial election to sue in state court was prompted in part by the Plaintiffs' own reliance on state law, for their substantive argument that the individual defendants are bound by the employment covenants regardless of where the employer's prerogatives under the employment agreements now repose. Second: at the hearing on the motion for remand, the Plaintiffs' counsel ended any remaining indeterminacy over the applicability of federal law, i.e., § 365. The Plaintiffs finally acknowledged that the employment agreements were not executory, within the meaning of § 365(a). Though late-coming, the admission was prudent; there were no longer mutual, balancing duties of future performance on the part of

14. Literally, "with the burden": "an item acquired *cum onere* is taken subject to existing burdens and charges." Bryan A. Garner, ed., *Black's Law Dictionary*, 408 (8th ed. 2004).

15. Defendants' Objection to the Plaintiffs' Motion for Abstention and Remand [Dkt. No. 11], 14, 8. To underline their insistence, the Removing Defendants cite *In re Eveleth Mines, LLC*, 312 B.R. 634, 644–645 (Bankr. D.Minn.2004), for the proposition that an issuing court is the best one to construe its own orders (and that a request for the construction of an order issued in a core proceeding in bankruptcy is itself a core proceeding under 28 U.S.C. § 157(b)(2)). That pitch was all well and good—it must have seemed to be an unbeatable theory to argue to the most receptive of audiences. However, the subsequent reversal on application of the Tax Injunction Act, 318 B.R. 682 (8th Cir. BAP 2004), shakes the rectitude of the original pronouncement. It also undercuts any perfunctory assumption of the bankruptcy jurisdiction over any and every controversy that arises after a sale under § 363.

both Fifty Below as employer and the individual defendants as employees, once the individual defendants resigned.[16] Put more functionally, there was no longer the possibility of a dynamic relationship that could so affect the interests of the bankruptcy estate out of ongoing *mutual* duties of performance that the regulation of § 365 had to be applied.[17] This concession perforce meant that a wholesale transfer of the employment agreements via assignment after assumption under § 365 had been unavailable at the time of the sale. So, there never was a prospect for the panoply of employer's rights passing to ARI as one side of a unitary contract received by an assignee.

The consequence of the concession is that the central issue of bankruptcy law that the Removing Defendants tried to parlay into this court was no longer viable. If the employment agreements as whole constructs were never assumed and assigned, ... they *are* where they *were.*

Beyond that, the remaining fundaments of the Removing Defendants' objection to abstention are significantly flawed in their unspoken assumption, that the employment *covenants* became unenforceable once Manty closed the sale to ARI, because she never assumed and assigned the employment *agreements.* In reality, the repose of the employment agreements as unitary constructs in the estate, to whatever effect, was irrelevant to the drivers for the Removing Defendants' other two propositions under substantive, nonbankruptcy

law. Those are intertwined with the Plaintiffs' original theory of suit—which relies exclusively on Minnesota state law for its proposition that the employment covenants are enforceable against the individual defendants, at the behest of ARI as a purchaser and assignee of good will and other assets within the going concern of Fifty Below's Retail Services Division.

The Plaintiffs' authority for this position is *Saliterman v. Finney,* 361 N.W.2d 175 (Minn.Ct.App.1985). In a broad sense, *Saliterman v. Finney* is time-tested in Minnesota law; or at least it has not been tested by later, collateral challenge in the Minnesota Supreme Court.

The opinion came out of an appeal by the purchaser of a dental practice, from a trial court's ruling that a covenant not to compete made by a dentist-employee of the seller of the practice was not assignable to or enforceable by the purchaser, after the employee's post-sale resignation of his employment. The Minnesota Court of Appeals queued up the issue in broader form first:

> Is a restrictive covenant not to complete embraced in an employment agreement assignable as part of the sale of a business to protect the goodwill of that business?

361 N.W.2d at 177. Then it posed a more narrowly-defined question in two different ways, with an observation to specify the relevant context:

> The issue here is whether a noncompete covenant in an employment

---

**16.** The Eighth Circuit defines an executory contract for the purposes of bankruptcy, as one "under which the obligation of both the bankrupt and the other party—are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *See In re Craig,* 144 F.3d 587, 593 (8th Cir.1998) (citing *In re Knutson,* 563 F.2d 916, 917 (8th Cir.1977)). This is "the Countryman

view." *See* V. Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn. L.Rev. 439, 460 (1973).

**17.** *See, in general, United States v. Dewey Freight Syst., Inc.,* 31 F.3d 620 (8th Cir.1994) (discussing utility of remedy of assumption or rejection to success of reorganization in bankruptcy).

agreement is assignable to protect the goodwill of a business that is being sold.

. . .

Does it follow that goodwill protected by an employee's covenant can be assigned?

Other jurisdictions have held noncompete covenants are assignable as part of business assets.

361 N.W.2d at 177–178. After favorably citing a Connecticut decision that recognized the status of restrictive employment covenants as themselves "a valuable asset of the business," the *Saliterman* court held:

We conclude that a covenant not to compete in an employment agreement is assignable ancillary to the sale of a business to protect the goodwill of that business.

*Id.* It then reversed the trial court's holding to the contrary, noting that the trial court had "preempted a proper measure of equitable reasons for a temporary injunction to enforce the noncompete covenant." *Id.*

In a later opinion, the same court affirmed a trial court's grant of an injunction to enforce a covenant of noncompetition assigned to a purchaser as part of the assets of the business purchased, against an employee terminated after the sale. It did so on a broad holding with a pointed recognition:

Noncompete agreements are assignable upon the sale of a business to protect the good will of the business.

*BFI–Portable Servs., Inc. v. Kemple*, 1989 WL 138978, *2 (Minn.Ct.App.1989) (citing *Saliterman* ) (unpublished).

As the Removing Defendants' counsel points out, the sequence of transactions and events in the two cases differ somewhat from the history in this litigation. It also appears that the United States District Court for the District of Minnesota has applied these two opinions with variant tone and emphasis, and not invariably to the benefit of a purchaser of a business. *Great America Leasing Corp. v. Dolan,* 2011 U.S. Dist. LEXIS 9031 (D.Minn. 2011); *Guy Carpenter & Co., Inc. v. John B. Collins & Assoc., Inc.,* 2006 WL 2502232, 2006 U.S. Dist. LEXIS 61765 (D.Minn.2006).[18] However, the Plaintiffs sued the Defendants on the authority of the case law from the Minnesota Court of Appeals—which is non-federal in origin and which has nothing to do with the substantive law of bankruptcy. Even before their final abandonment of § 365 as a possible, alternate conduit to enforcement, the Plaintiffs based their suit primarily on this state-law authority. Now their reliance is exclusive.

Thus, legal authorities under Minnesota law will govern the issue of standing, as among the Plaintiffs, and particularly as to ARI. They will also direct the issue of enforceability. If ARI's standing fails because it lacks some prerequisite for the enforcement of a restrictive employment covenant as a successor-purchaser, so be it. For the purposes of abstention, the key part is that state law—and state law alone—will govern the dispute between the two sides.

 With the issue of federal substantive law cleared out of the removal, the application of 28 U.S.C. § 1334(c) is straightforward. There is one threshold

---

**18.** In both of these decisions, a pivotal issue was the presence (or absence) of a "successor provision" in the instruments of sale, that could be construed to effect an assignment of the protections of restrictive employment covenants. The existence and consequence of such a provision is also governed by state law.

point with some nuance: the classification of the removed counts within the statutory structure for the bankruptcy jurisdiction and the division of judicial labor within it.[19]

To cut to the chase: Counts One, Two, Three, Six, and Eight, separately and in aggregation, are only a proceeding related to Fifty Below's bankruptcy case, 28 U.S.C. §§ 1334(b) and 157(c)(1), in the understandings of federal bankruptcy jurisdiction. The counts as a whole do not fall within any of the specific categories of legal proceeding given statutory "core" status in 28 U.S.C. § 157(b)(2).[20] Determining the post-sale consequences of restrictive employment covenants alleged to have been among the assets sold out of a bankruptcy estate does not fit directly into the two functions of bankruptcy relief—the administration of the estate (the gathering of assets and their division among creditors) and the grant of discharge. Hence, it cannot qualify as a core proceeding even if it were appropriate to split an aggregated request for relief into the presentation of its component issues to make one of them a discrete "core proceeding."

Nor is it valid to shoehorn the issues back into core bankruptcy functions by calling them a matter of construing an order issued to facilitate estate administration, and interpreting the documents executed to effect a transaction by the estate. The Removing Defendants do not point to any aspect of the order or the documents that makes them unique to bankruptcy. But for the (extraneous) transfer free and clear of liens, the sale was structured and documented as if it were to be conducted outside of bankruptcy. Thus principles of construction and interpretation under non-bankruptcy law will apply.[21]

It does fall within the broad scope of related proceeding status, however. *See Celotex Corp. v. Edwards,* 514 U.S. 300, 307–308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *In re Farmland Industs., Inc.,* 567 F.3d 1010, 1019 (8th Cir.2009); *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 773 (8th Cir.1995); *Abramowitz v. Palmer,* 999 F.2d 1274, 1277–1278 (8th Cir. 1993) (variously describing related-proceeding jurisdiction as having "some breadth," or being "fairly broad" and even "extremely broad"). As part of the sale

---

**19.** The colloquial phrase is the Chief Justice's. *See Stern v. Marshall,* 564 U.S. ——, ——, 131 S.Ct. 2594, 2620, 180 L.Ed.2d 475 (2011).

**20.** The Removing Defendants tried to shunt around that by splitting out a discrete process of adjudication on one or a few isolated issues within the larger requests for relief under those counts, and terming that a "core proceeding" derivative from the Trustee's process of selling assets of the bankruptcy estate. However, this just does not work. The Plaintiffs do not rely on 11 U.S.C. § 363 for any substantive proposition; indeed, they probably could not, because state law governs the nature of property interests in the bankruptcy process and there is no "federal law of property" in bankruptcy. *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007); *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)

(both holding that property interests for purposes of bankruptcy administration are created and defined by state law).

**21.** Put a different way, inside every sale by a bankruptcy trustee is a contractual undertaking in transfer of property. There is no provision in the Bankruptcy Code that expressly regulates the identity of assets so sold, or the terms of the sale between trustee-seller and purchaser. Those are matters of the state law of contract and property. The focus of the controversy here, lies there. As a result, this matter is distinguishable from *Eveleth Mines.* There, the declaratory judgment action was given a derivative core-proceeding status because it required determinations on the boundaries of the divestiture of rights and claims through a sale free and clear of liens. The sale free and clear is a remedy unique to the bankruptcy process, hence unquestionably a core proceeding itself.

process, Manty as Trustee agreed to join forces with ARI in any post-sale legal proceeding for the vindication of ARI's rights as buyer, where her presence might be required to enforce the employer's rights under the employment covenants.[22] This commitment was a bargained term of the sale she conducted in the administration of the estate. Her contractually-obligated co-initiation and maintenance of this litigation has a "conceivabl[e] ... effect on the estate being administered in bankruptcy," *Celotex Corp. v. Edwards*, 514 U.S. at 308, 115 S.Ct. 1493 thereby making this a related proceeding. Her commitment obviously was part of the bargain that got the sale closed.

■ With the subject counts classified that way, 28 U.S.C. § 1334(c) applies.[23] This is a related proceeding governed by nonbankruptcy (non-title 11) law that arose through events and acts that transpired outside Fifty Below's bankruptcy case. No other basis for federal jurisdic-

tion applied.[24] There is no dispute that the Plaintiffs timely brought their motion. And, there was no dispute that the St. Louis County District Court had jurisdiction, having exercised it on commencement of this lawsuit without controversy. Finally, the Removing Defendants said nothing about Judge Hylden's ability to timely adjudicate the issues presented to him—including those he had under advisement when the Notice of Removal was filed. He is to be given the deference of a presumption that he will act with proper dispatch.[25]

As a result, abstention was mandated.

■■ Even if it had not been required on all of the statutory elements, discretion was appropriately exercised in favor of abstention under 28 U.S.C. § 1334(c)(1).[26] The parties haggle tenaciously on the proper application of *Saliterman* and its progeny to the facts at bar. The grant or denial of relief to the Plaintiffs will clearly require some fine-tuning of that governing

**22.** Assumption and Assignment and Transition Services Agreement, ¶ 11 (pp. 4–5) (Exhibit B to Notice of Hearing and Motion for Abstention and Remand of Removed Claims [Dkt. No. 7]).

**23.** As noted recently by our district court, mandatory abstention does lie in the case of a proceeding that has been removed in its entirety pursuant to 28 U.S.C. § 1452. *Minnesota Life Ins. Co. v. Credit Suisse First Boston Mortgage Sec. Corp.*, 2013 WL 704459, *2 (D.Minn.2013). Where part of a lawsuit initially commenced in a non-federal forum is left there on removal, there is no possible objection to the application of mandatory abstention—even under the "minority rule" discussed in *Minnesota Life Ins. Co. v. Credit Suisse*.

**24.** The Plaintiffs' requests for relief were not based on federal substantive law, so federal-question jurisdiction under 28 U.S.C. § 1331 was not available. And, there is not complete diversity between the sides, so 28 U.S.C. § 1332(a) would not lie either. Of the parties, Manty and the individual defendants would qualify as citizens of Minnesota. ARI,

however, is a Milwaukee-based corporation; and Net Driven is not a citizen of Minnesota and apparently had no contact with this state until it established its presence by hiring the individual defendants.

**25.** In fact, at the hearing before this court on the Plaintiffs' renewed motion for a temporary restraining order, counsel for the Removing Defendants stated his belief that Judge Hylden had been ready to deny a temporary injunction to the Plaintiffs. There is no indication where counsel got his information. If the statement reflected the reality, it does beg the question of why the removal was even essayed. The matter of standing may have seemed very important at the time of the removal; but the prospect of a pivotal substantive win would seem to trump.

**26.** Discretionary abstention can be ordered on a showing of most, but not all, of the requirements for mandatory abstention. *In re Titan Energy, Inc.*, 837 F.2d 325, 333 n. 14 (8th Cir.1988).

898

precedent to the variant facts here, and under the instruments of sale used by the Trustee and ARI. The enforcement of restrictive employment covenants is long-recognized as sensitive subject matter to be carefully treated, given the conflicting policy considerations. With that, it is far more appropriate to let a state court address the nuances under the law of its own jurisdiction. *In re Arctic Ents., Inc.*, 68 B.R. 71, 77–78 (D.Minn.1986); *In re Fulda Ind. Co-op.*, 130 B.R. at 976.

In any event, the "interests of justice" were not neutral either. A convoluted procedural history billowed out at the Removing Defendants' instance, over only a two-month period. The gambit of removing part, but not all of, the counts under a newly-filed complaint to a different court had very little to say for it. It certainly did not promote a measured and consistent adjudication. Both courts were left uncertain about what to do. In particular, it created indefensible confusion about the viability of previously-granted equitable relief by the original forum. And, the justification for the ploy was especially facile—to get rulings on very narrow issues that had little relevance to the merits, for the foundation for a challenge to the standing of all of the Plaintiffs to get redress.

Abstention, then, was fully merited under either statutory basis. Remand had to follow, without question. *Minnesota Life Ins. Co. v. Credit Suisse*, 2013 WL 704459, *4. That is why the Plaintiffs' motion was granted.